The Ohio Novelty Company v. Commissioner. James E. Fredo v. Commissioner.
Ohio Novelty Co. v. Commissioner
Docket Nos. 6664, 6665.
United States Tax Court
1947 Tax Ct. Memo LEXIS 58; 6 T.C.M. (CCH) 1128; T.C.M. (RIA) 47293; October 17, 1947
*58 Florence G. Denton, Esq., Huntington-Bank Bldg., 17 So. High St., Columbus 15, Ohio, for the petitioners. John O. Durkan, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing, involve the following deficiencies: 1939
1940
Ohio Novelty Company (Doc-
ket No. 6664): Income tax
$1,571.19
$3,115.63 $ Declared value excess-
profits tax
740.04
1,190.48
Excess profits tax
1,460.50
James E. Fredo (Docket No.
6665): Income tax
514.86
2,172.44
The returns of both petitioners were filed with the collector of internal revenue for the 18th district of Ohio, at Cleveland. The sole contested issue in Docket No. 6664 is whether the Commissioner erred in disallowing portions of certain deductions which were taken for the alleged business expenses of a corporation. The respondent contends that it is impossible to determine from the evidence whether the disputed amounts are allowable as deductions under section 23 (a) (1) (A). The Commissioner increased the income of an employee in Docket No. 6665 on account of unreported reimbursements of alleged business expenses, but *59 allowed no corresponding deductions therefor. He also disallowed deductions which were taken for alleged expenses of an advisory service. These adjustments are at issue. All of the issues are involved in both taxable years. Findings of Fact The petitioner in Docket No. 6664 is The Ohio Novelty Company, hereinafter referred to as the Company. It was organized as an Ohio corporation in 1931 to succeed to a business which had been conducted for about twenty years. It is engaged in the business of selling supplies and merchandise and leasing slot machines to clubs and lodges located in certral and northern Ohio and western Pennsylvania. It received from 20 to 25 per cent of the receipts from the operation of its slot machines. During the taxable years approximately half of its net income was derived from that source and the other half was derived from the sale of merchandise. Its principal sales agents were Harry C. Mansfield, president, James E. Fredo, manager, and Howard Hendry. Fredo is the petitioner in Docket No. 6665. The Company's agents joined various clubs and lodges in Ohio and Pennsylvania in order to secure and hold customers. It was their custom to buy drinks, cigars, *60 etc., as "treats" for the management and club or lodge members present when they sold merchandise or collected slot machine receipts. They did not visit the clubs or lodges for social or personal use. The Company reimbursed them for all the expenditures which they made. The Company also gave parties where food and liquor were served to the officers of clubs and lodges. It also distributed souveniers and Christmas packages to the officers in proportion to the amounts of business obtained. The purpose of these practices was to promote and maintain the good will of customers in order to obtain or retain outlets for merchandise and locations for slot machines. Competitors indulged in similar practices. The Company did very little direct advertising. Its overhead expenses were relatively small. Its business has doubled since about 1933. The Company deducted in its 1939 return a total of $10,723.80 as "selling and traveling expenses." A part of the 1939 deduction represents actual expenditures of $1,646.67 for "advertising and selling [entertainment]." Of this amount the Company spent $934.09 for such items as pencils, calendars, balloons, advertisements, dues and contributions to *61 clubs and lodges, liquor, cigars, and hotel bills. These expenses were ordinary and necessary in carrying on its business. The Commissioner disallowed this part of the deduction in full. Another part of the 1939 deduction represents actual expenditures of $1,045.09 for "sales promotion [donations and gifts]." Of this amount the Company spent $856.22 for such items as jewelry, ash trays, candy, and a small donation. These expenses were ordinary and necessary in carrying on its business. The Commissioner disallowed this part of the deduction in full. Another part of the 1939 deduction represents actual reimbursements of $1,150.57 for "expenditures by H. Mansfield." Of this amount approximately $1,058.52 was spent for such items as gasoline, automobile repairs, parking, hotel expenses, tips, telephone, freight charges, and miscellaneous purchases for the Company, including "treats" for its customers. These expenses were ordinary and necessary in carrying on the Company's business. The Commissioner allowed $287.64 of this part of the deduction and disallowed the balance. Another part of the 1939 deduction represents actual reimbursements of $1,564.47 for "expenditures by H. Hendry. *62 " Of this amount approximately $1,439.31 was spent for such items as gasoline, automobile repairs, parking, hotel expenses, tips, telephone, freight charges, and miscellaneous purchases for the Company, including "treats" for its customers. These expenses were ordinary and necessary in carrying on the Company's business. The Commissioner allowed $156.45 of this part of the deduction and disallowed the balance. Another part of the 1939 deduction represents actual reimbursements of $2,648.60 for "expenditures by J. E. Fredo." The Commissioner disallowed this part of the deduction in full. Another part of the 1939 deduction represents actual expenditures of $2,516.79 for supplies and stationery, telephone, car repairs, oil and gas, and miscellaneous items. The Commissioner allowed this part of the deduction in full. The balance of the 1939 deduction represents actual expenditures of $151.61. The Commissioner disallowed this part of the deduction in full. The Company deducted in its 1940 return a total of $13,038.30 as "selling and traveling expenses." A part of the 1940 deduction represents actual expenditures of $1,615.08 for "advertising and selling [entertainment]." Of this *63 amount the Company spent $981.07 for such items as balloons, matches, advertisements, dues and contributions to clubs and lodges, liquor and cigars. These expenses were ordinary and necessary in carrying on its business. The Commissioner disallowed this part of the deduction in full. Another part of the 1940 deduction represents actual expenditures of $1,332.82 for "sales promotion [donations and gifts]." Of this amount the Company spent $1,034.71 for such items as jewelry, candy, and cigars. These expenses were ordinary and necessary in carrying on its business. The Commissioner disallowed this part of the deduction in full. Another part of the 1940 deduction represents actual reimbursements of $1,503.41 for "expenditures by H. Mansfield." Of this amount approximately $1,353.07 was spent for such items as gasoline, automobile repairs, parking, hotel expenses, tips, telephone, freight charges, and miscellaneous purchases for the Company, including "treats" for its customers. These expenses were ordinary and necessary in carrying on the Company's business. The Commissioner allowed $375.85 of this part of the deduction and disallowed the balance. Another part of the 1940 deduction *64 represents actual reimbursements of $1,620.38 for "expenditures by H. Hendry." Of this amount approximately $1,458.34 was spent for such items as gasoline, automobile repairs, parking, hotel expenses, tips, telephone, freight charges, and miscellaneous purchases for the Company, including "treats" for its customers. These expenses were ordinary and necessary in carrying on the Company's business. The Commissioner allowed $162.04 of this part of the deduction and disallowed the balance. Another part of the 1940 deduction represents actual reimbursements of $3,806.45 for "expenditures by J. E. Fredo." The Commissioner disallowed this part of the deduction in full. Another part of the 1940 deduction represents actual expenditures of $3,153.14 for supplies and stationery, telephone, car repairs, oil and gas, and miscellaneous items. The Commissioner allowed this part of the deduction in full. The balance of the 1940 deduction represents actual expenditures of $7.02. The Commissioner disallowed this part of the deduction in full. Opinion LEMIRE, Judge: The Commissioner made the following adjustments to the deductions taken by the Ohio Novelty Company: 1939
1940
Selling and traveling ex-
penses deducted
$10,723.80
$13,038.30
Allowed by Commissioner
2,960.88
3,691.03
Disallowed by Commis-
sioner
$ 7,762.92
$ 9,347.27
*65 At the hearing the parties stipulated that the "amounts in dispute for the Ohio Novelty Company account" are as follows: Type of expenditure
1939
1940
Advertising and selling
$ 1,646.67
$ 1,615.08
Sales promotion
1,045.09
1,332.82
Expenditures by H. Mans-
field
862.93
1,127.56
Expenditures by J. E.
Fredo
2,648.60
3,806.45
Expenditures by H. Hen-
dry *
1,408.02
1,458.34
Other expenditures
151.61
7.02
Total
$ 7,762.92
$ 9,347.27
The respondent does not deny that amounts in dispute were actually spent. His principal contention is that the petitioners have failed to identify the individual expenditures which were disallowed and are now in dispute. For that reason he says that it is impossible to be sure that the allowance of any additional amounts will not result in duplication of the amounts which were allowed as deductions and are not now in dispute. We think that both the allowed and disallowed expenditures have been sufficiently identified by the petitioners so that duplication can be avoided. The petitioners introduced *66 two exhibits which include all of the deducted expenditures, both allowed and disallowed, with the exception of the "other expenditures" of $151.61 in 1939 and $7.02 in 1940, as stipulated. The exhibits were received without objection and without cross-examination. In reply to the petitioners' brief the respondent states that the exhibits "allegedly contain the disputed items" and then asks: "What do the individual amounts contained in exhibits 20 and 21 represent? What were they spent for? Were the items identified by petitioners' witnesses as to the nature thereof? Who prepared the exhibits? What guarantee is there that they do represent contested items?" If these are intended as objections to the competency of the exhibits they come too late. The findings of fact dispose of the respondent's principal contention. These findings and our ultimate decisions are summarized in the following tables: Amount disallowed
1939
Amount
Amount
Balance
Balance
Type of expenditure
deducted
allowed
allowable
disallowed
Advertising and entertainment
$ 1,646.67
$ 934.09
$ 712.58
Sales promotion
1,045.09
856.22
188.87
Expenditures by H. Mansfield
1,150.57
$ 287.64
770.88
92.05
Expenditures by J. E. Fredo
2,648.60
2,648.60
Expenditures by H. Hendry
1,564.47
156.45
1,282.86
125.16
Supplies, telephone, etc.
2,516.79
2,516.79
Other expenditures
151.61
151.61
Totals
$10,723.80
$2,960.88
$3,844.05
$3,918.87
*67 Amount disallowed
1940
Amount
Amount
Balance
Balance
Type of expenditure
deducted
allowed
allowable
disallowed
Advertising and entertainment
$ 1,615.08
$ 981.07
$ 634.01
Sales promotion
1,332.82
1,034.71
298.11
Expenditures by H. Mansfield
1,503.41
$ 375.85
977.22
150.34
Expenditures by J. E. Fredo
3,806.45
3,806.45
Expenditures by H. Hendry
1,620.38
162.04
1,296.30
162.04
Supplies, telephone, etc.
3,153.14
3,153.14
Other expenditures
7.02
7.02
Totals
$13,038.30
$3,691.03
$4,289.30
$5,057.97
The expenditures for "Advertising and selling [entertainment]" were disallowed in full. They are identified in substantial part by annotations which appear in the left-hand margins of exhibits 20 and 21. Most of the entries are supported by checks which have been matched with the columns of the exhibits. We have made a detailed analysis of the exhibits, the supporting checks and the testimony in general. We have found that the Company spent $934.09 in 1939 and $981.07 in 1940 for such identifiable items as pencils, calendars, balloons, matches, a few advertisements, dues and contributions to clubs and *68 lodges, liquor, cigars, and hotel bills. On all of the evidence we hold that these expenditures constitute ordinary and necessary expenses of the Company and that the Commissioner erred in disallowing the amounts so found. We have been unable to identify or understand the balance of the "Advertising and selling" expenses and to that extent the Commissioner's determination is sustained for lack of evidence. The expenditures for "Sales promotion [donations and gifts]" were also disallowed in full. They are similarly identified in substantial part by the marginal notes in exhibits 20 and 21, supported by checks which have been matched with the columns of the exhibits. We have found that the Company spent $856.22 in 1939 and $1,034.71 in 1940 for such identifiable items as jewelry, ash trays, cigars, candy, and a small donation. The Company spent about 90 per cent of these amounts for candies which were distributed at Christmas to the officers of clubs and lodges. On all the evidence we hold that these expenditures constitute ordinary and necessary expenses of the Company and that the Commissioner erred in disallowing the amounts so found. The Commissioner's determination with respect *69 to the balance of the "Sales promotion" expenses is sustained for lack of evidence. The expenditures considered thus far were made directly by the Company. The remaining expenditures were made by its agents, Mansfield, Fredo, and Hendry, who were reimbursed at frequent intervals. The Company deducted the reimbursed amounts in its tax returns and contends that they constitute ordinary and necessary travel and entertainment expenses. The expenditures made by Mansfield and Hendry are not explained in exhibits 20 and 21, but they are supported in substantial part by their expense vouchers. It is conceded that the money was actually spent. The respondent contends that the evidence is insufficient for the purpose of identifying the nature of the individual expenditures. The vouchers show that the money was spent for such items as gasoline, automobile repairs, parking, the expense of hotels, meals, tips, telephone, freight charges, and miscellaneous purchases for the Company. However, many of the meals include the costs of "lunch" and "dinner" without further explanation; hence, it is impossible to determine whether all of such expenditures were incurred "away from home" within the meaning *70 of the statute. The unexplained meals of both Mansfield and Hendry represent approximately 8 per cent of the total expenditures shown on the 1939 vouchers and approximately 10 per cent of the total expenditures shown on the 1940 vouchers, respectively. The vouchers also include, following the names of specific clubs and lodges, the type of expenditure which we have hereinbefore described as "treats." The respondent argues that this type of expenditure is not deductible because items of a similar nature were disallowed in Horace Mill, 5 T.C. 691. There we said the evidence was insufficient to show that the expenditures were necessary. Here we think the evidence is sufficient. The Company had reimbursed its agents for such expenditures over a long period of time. Its competitors made similar expenditures. The purpose was to promote and maintain business. On all of the evidence we think they constitute ordinary and necessary expenses of the Company. Cf. F. L. Bateman, 34 B.T.A. 351, 367. We believe that the expenditures made by Mansfield and Hendry should be approximated as closely as possible on the basis of their testimony and vouchers and in the light of *71 the foregoing discussion. Cf. Cohan v. Commissioner, 39 Fed. (2d) 540. We hold that the expenditures made by Mansfield and Hendry are allowable as business expense deductions of the Company in the following amounts: 1939
1940
Mansfield
$1,058.52
$1,353.07
Allowed by Commissioner
287.64
375.85
Balance allowable
$ 770.88
$ 977.22
Hendry
$1,439.31
$1,458.34
Allowed by Commissioner
156.45
162.04
Balance allowable
$1,282.86
$1,296.30
The expenditures made by Fredo are not supported by any vouchers. He was the manager of the Company and did not itemize his expenditures. He used a separate pocketbook for the Company's money. Although he testified that the money was spent solely to promote the Company's business it is impossible for us to determine the nature of his expenditures from the evidence given in these proceedings. He testified concerning several of the checks which were offered in evidence. We have already given effect to most of those items under the expenditures for "Advertising and selling" and "Sales promotion." Fredo testified concerning two checks which were issued to reimburse him for the expenditures now in question. *72 In the one case, $30 was charged on January 6, 1939, for a trip to Cleveland. In the other case, $20 was charged on January 12, 1939, for a trip to Mansfield and Cleveland. We do not know how the money was spent. The witness could not say whether he had stayed over night. There is no evidence upon which we could determine whether his individual expenditures were ordinary and necessary. The expenditures made by Fredo were disallowed in full in Docket No. 6664. The Commissioner increased his individual income for the reimbursements made to him without allowing any corresponding deductions therefor in Docket No. 6665. In our opinion the evidence is insufficient for the purpose of making and finding in either proceeding and therefore we sustain the Commissioner's determination in both proceedings with respect to the reimbursed expenditures of Fredo. The amounts stipulated as "Other expenditures," $151.61 in 1939 and $7.02 in 1940, have not been identified or otherwise explained. We sustain the Commissioner's determination with respect to those amounts. The final issue concerns certain deductions which were taken by Fredo for alleged expenses of an advisory service. He argues that *73 the fact and nature of the expenditures are shown by the respondent's notice of deficiency and that the only point at issue is whether the expenditures are allowable as deductions. He submitted no evidence. We sustain the Commissioner's disallowance of the deductions in question for failure of proof. Decision will be entered under Rule 50 in Docket No. 6664. Decision will be entered for the respondent in Docket No. 6665. Footnotes
*. Both briefs state that the amounts following Hendry's name were inadvertently not read into the record.↩